Donald F. Campbell, Jr., Esq. (DC8924)
**GIORDANO, HALLERAN & CIESLA, P.C.**
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701
(732) 741-3900

Proposed Attorneys for Debtor, Neighborhood
Health Services Corp.

| | |
|---|---|
| In re<br><br>NEIGHBORHOOD HEALTH SERVICES CORPORATION,<br><br>Debtor. | **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY, NEWARK VICINAGE**<br><br>Chapter 11<br><br>Case No. 15-10277 (VFP)<br><br>Judge: Hon. Vincent F. Papalia, U.S.B.J. |

**APPLICATION FOR ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 507(a)(3), AUTHORIZING, BUT NOT DIRECTING, PAYMENT OF PRE-PETITION WAGES, SALARIES, TAXES AND OTHER COMPENSATION**

TO:  HONORABLE VINCENT F. PAPALIA
     UNITED STATES BANKRUPTCY JUDGE

Neighborhood Health Services Corporation (the "Debtor"), by and through the Debtor's proposed counsel, Giordano, Halleran & Ciesla, P.C., hereby moves before this Court (the "Motion") for entry of an Order pursuant to 11 U.S.C. §§ 105(a), 363 and 507(a)(3) authorizing, but not directing, the Debtor to pay pre-petition wages, salaries, taxes and other compensation, and respectfully represent as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

1

3. The statutory predicates for the relief sought herein are sections 105, 363, 507(a)(3) and (4) of the Bankruptcy Code.

## BACKGROUND

4. A thorough description of the Debtor's operations is set forth in the Certification of Rudine Smith, President and Chief Executive Officer of Neighborhood Health Services Corporation, Debtor, in Support of First Day Motions (the "Smith Certification"), which is being filed contemporaneously with, and in support of, this Motion. The Smith Certification includes, among other things, and without limitation, descriptions of the Debtor's operations and formation, properties, pre-petition financing and the events precipitating this Chapter 11 filing. The Smith Certification is incorporated herein by reference as if fully set forth herein.

5. The Debtor is a not-for profit Federal Qualified Health Center ("FQHC"), which provides adult medicine, adolescent medicine, pediatrics school based services, internal medicine, obstetrics, gynecology, family planning, pediatrics, dentistry, health education, social work support services and after-hours care. Additional services include HIV/AIDS treatment and therapy, nutritional counseling, and outreach services.

6. The Debtor's corporate headquarters is located at 1700-58 Myrtle Avenue, Plainfield, New Jersey. The Debtor has additional centers located in the City of Plainfield, the City of Elizabeth, Newton, Phillipsburg and neighboring communities. The Debtor leases the locations in the Towns of Newton and Phillipsburg.

7. The Debtor's primary assets are as follows: (a) Real Property located at 1700-58 Myrtle Avenue, Plainfield New Jersey having a fair market value of approximately $6,118,497 and (b) accounts receivables – approximately $2.5 million.

8.  PNC Bank ("PNC") is a Debtor's secured lender having a first priority mortgage on the Debtor's Real Property. As of January 7, 2015, the Debtor was indebted to PNC in the approximate amount of $480,000.

9.  Neighborhood Health experienced several factors that necessitated the need to file this Chapter 11 bankruptcy petition and restructure its debts through operations. Specifically, New Jersey Primary Care Association ("NJPCA") filed a lawsuit on behalf of NHSC and 19 other FQHCs against the State of New Jersey, Department of Human Services, Department of Medical Assistance and Health Services ("DMAHS") in the action <u>New Jersey Primary Care Association v. State of New Jersey, Department of Human Services, et al.</u>, United States District Court, District of New Jersey Civil No. 12-00413 (JAP) for changing without due process the reimbursement payment methodology to the health centers in the State of New Jersey. DMAHS required NHSC to submit six (6) additional fields of data, two of which would be become burdensome to obtain and maintain. In addition, DMAHS caused a critical change it the methodology requiring the Medicaid HMO carriers to pay NHSC before the State would make a supplemental payment to bring the health center to full reimbursement amount. Without both of these conditions being met, DMAHS refused to pay the supplemental payments to NHSC, which lead to significant reimbursement delay in excess of $1 million from July 2011 through August 2012. While NJPCA has won the lawsuit and the State was ordered to provide emergency interim payments. NHSC received its remaining 2011 Third and Fourth Quarter payments on August 24, 2012. DMAHS has continued to delay payments and in most instances has refused to reimburse NHSC the full amounted owed. Since 2012, NHSC has received on average less than 50% of the amount submitted for reimbursement. To date, DMAHS owes NHSC approximately $1,171,756.

10. In addition, NHSC has experienced a high turnover in fiscal leadership positions, had to make loan repayments on advances on its HRS 330 grant, update its practice management systems, hire credentialing staff to ensure compliance with Annual Medicare Cost Reports in order to receive Medicare reimbursement for the services, and cover unavoidable and unbudgeted expenses that impacted cash flow.

11. The Debtor's outstanding priority tax claims are well in excess of $3.5 million. In addition, Local 74 is asserting a claim of approximately $114,639.93 against the Debtor in connection with a judgment obtained. The Debtor's general unsecured non-priority debts are approximately $2.2 million.

12. The Debtor currently employs approximately 135 full-time employees and 32 part-time employee. Its payroll approximates $835,000 per month. The Debtor is a party to two collective bargaining agreements which govern approximately 88 of its employees.

13. Historically, the Debtor pays every other week, two week in arrears. By way of example, the 1/16/2015 payroll covers the period of 12/28/2014 through 1/9/2015. As a result thereof, the Debtor estimates the total amount of Pre-Petition Employee Obligations sought to be paid pursuant to this Motion will be approximately $385,000, which includes all applicable taxes.[1]

14. With respect to vacation days and sick/personal days, on an annual basis, the non-union employees are permitted 12 sick days and 3 personal days and depending on length of employment 10 to 20 vacation days with pay. Accrued vacation days not used by the end of the

---

[1] The Debtor issued a payroll on 1/2/2015 covering the period of 12/14/2014 through 12/27/2014, which approximated $379,078.44 inclusive of taxes. To the extent that these payroll checks have not cleared or the Court deems same to be a post-petition payment of a pre-petition obligation, the Debtor requests that these checks be honored. The Debtor submits that no employee will exceed the statutory limit even with the aggregation of two pay periods.

4

calendar year may be carried over into the following year with prior approval from the Chief Executive Officer, or paid out at termination or resignation in accordance with company policy.

15.  The Debtor offers a 401(k) plan and is currently in arrears in the amount of $16,194.58.

16.  Debtor's employees are owed out of pocket expenses less than $5,000.00.

17.  The Debtor must also pay approximately $19,553.67 in garnishments and other employee benefits, vision (i.e. such as union dues, insurance, etc.) during this period.

18.  None of the Debtor's employees are owed more than $10,950 for wages, salaries, commissions, out of pocket expenses or other compensation earned within one hundred eighty (180) days before the Petition Date.

## **RELIEF REQUESTED AND BASIS THEREFOR**

19.  By this Motion, the Debtor seeks the entry of an Order, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, authorizing, but not directing, the payment of certain pre-petition obligations to and on behalf of the current employees (collectively, the "Pre-Petition Employee Obligations"), including, but not limited to, the amounts owed for wages, salaries, commissions, paid-time off and all related taxes. The Debtor estimates the total amount of Pre-Petition Employee Obligations sought to be paid pursuant to this Motion will be approximately $427,000.

20.  Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, claims against the Debtor for "wages, salaries, or commissions, including vacation, severance and sick leave pay," earned within one hundred eighty (180) days before the Petition Date, are afforded unsecured priority status to the extent of $11,725.00 per employee.

21. In addition, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

22. Section 105(a) of the Bankruptcy Code further provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Id. at § 105(a).

23. The "necessity of payment" doctrine recognizes the existence of the judicial power to authorize the debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor. In re Ionosphere Clubs, Inc., 98 B.R. 174 (Bankr. S.D.N.Y. 1989); In re Chateaugay Corp., 80 B.R. 279 (S.D.N.Y. 1987).

24. Numerous courts in other chapter 11 cases have approved payment of pre-petition claims for compensation, benefits, and expense reimbursements on the ground that payment of such claims was necessary. E.g., In re The Grand Union Company, Case No. 98-27912 (JW) Order dated June 24, 1998, In re NBO Stores, Inc., Case No. 95-20001 (RG) (Bankr. D.N.J.), Order dated January 5, 1995; In re Emerson Radio Corp., Case Nos. 93-27874(NW) through 93-27879(NW) (Bankr. D.N.J.), Orders dated September 30, 1993 and October 1, 1993; In re Kiwi Int'l Air Lines, Inc., Case No. 96-28679 (RG) (Bankr. D.N.J.), Order dated October 1, 1996; In re Trader Horn, Inc., Case Nos. 94-27349 (WT); 94-27396 (WT) through 94-27408 (WT) (Bankr. D.N.J.), Order dated October 27, 1994). See also In re Maidenform Worldwide, Inc., et al., Case No. 97-44869 (CB) (Bankr. S.D.N.Y. July 22, 1997); In re R.H. Macy & Co., et al., Case No. 92-40477 (BRL) (Bankr. S.D.N.Y. March 23, 1992); In re PSF Finance L.P., Case No. 96-1032 (Bankr. D. Del. July 2, 1996); In re G. Heileman Brewing Co., Case No. 96-501 (Bankr. D. Del. April 3, 1996); In re Edison Brothers Stores, Inc., Case No. 95-1354 (Bankr. D. Del.

November 3, 1995); In re Weiner Stores, Inc., Case No. 95-417 (Bankr. D. Del. April 12, 1995); In re The Ormond Shops, Inc., Case No. 94-324 (Bankr. D. Del. April 5, 1994); The Kendall Co., Case Nos. 92-667 and 92-668 (Bankr. D. Del. May 18, 1992); In re Memorex Telex Corp., Case Nos. 92-8 through 92-13 (Bankr. D. Del. January 6, 1992).

25. Such payments should be permitted in view of the debtor's "ability to pay the claims without disturbing the *pro rata* distribution to other creditors with similar or the same legal rights against the estate." Epling, Pre-confirmation or Pre-closing Payment of Pre-Petition Claims in Bankruptcy, 94 Comm. L.J. 187, 188 (1989). Thus, it is clear that when "confronted with special circumstances . . . particularly in the early stages of the case, a court may authorize the payment of pre-petition debts in order to preserve the potential for rehabilitation." Ordin, Finality of Order of Bankruptcy Court, 54 Am. Bankr. L.J. 173, 177 (1980).

26. In the instant case, the Pre-Petition Employee Obligations constitute Priority Claims. Many of the Debtor's employees are compensated at modest levels. It would cause a great hardship to them if they were to lose (or suffer delay in receiving) their pay and/or benefits.

27. To avoid the hardship that the Debtor's employees may otherwise suffer and to maintain morale for the employees that have remained with the Debtor under what are and will continue to be extremely difficult working conditions, the Debtor seeks authority to satisfy the Pre-Petition Employee Obligations.

28. In order to carry out this request, the Debtor seeks authority, as may be necessary, for the applicable banks and other financial institutions, in accordance with the Debtor's instructions, to receive, process, honor and pay all checks presented for payment and to honor all electronic payment requests made by the Debtor related to the Pre-Petition Employee Obligations.

## NOTICE

29. Notice of this Motion and the proposed form of order has been provided to: (i) the Office of the United States Trustee; (ii) the Debtor's prepetition lender; and (iii) each of the Debtor's twenty (20) largest unsecured creditors. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## NO PRIOR REQUEST

30. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests the entry of the order submitted herewith, (a) authorizing the payment of the Pre-Petition Employee Obligations and (b) granting such other and further relief as is just and proper.

Respectfully submitted,

**GIORDANO HALLERAN & CIESLA, P.C.**
Proposed Counsel to Neighborhood Health Services Corporation, Chapter 11 Debtor and Debtor in Possession

By: /s/ *Donald F. Campbell, Jr.*
DONALD F. CAMPBELL, JR.

Dated: January 9, 2015

Docs #1782136-v1