Donald F. Campbell, Jr., Esq. (DC8924)
**GIORDANO, HALLERAN & CIESLA, P.C.**
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701
(732) 741-3900

Proposed Attorneys for Debtor, Neighborhood
Health Services Corp.

|  |  |
|---|---|
| In re <br><br> NEIGHBORHOOD HEALTH SERVICES CORPORATION, <br><br> Debtor. | **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY, NEWARK VICINAGE** <br><br> Chapter 11 <br><br> Case No. 15-10277 (VFP) <br><br> Judge: Hon. Vincent F. Papalia, U.S.B.J. |

**APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b) AND 507 (a)(7) AUTHORIZING CONTINUATION OF CERTAIN CUSTOM PRACTICES**

**TO:    HONORABLE VINCENT F. PAPALIA**
**UNITED STATES BANKRUPTCY JUDGE**

Neighborhood Health Services Corporation ("NHSC" or the "Debtor"), by and through its proposed counsel Giordano, Halleran & Ciesla, P.C., hereby moves (the "Motion") this Court for an order authorizing the Debtor to continue to accept credit cards as a method of payment by customers in the ordinary course of business in the same manner as the Debtor accepted credit card payments prior to the Filing Date, and such other similar policies, programs, and practices of the Debtor (collectively, the "Custom Practices"). In further support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363(b), and 507(a)(7).

## BACKGROUND

3. A thorough description of the Debtor's operations is set forth in the Certification of Rudine Smith, President and Chief Executive Officer of Neighborhood Health Services Corporation, Debtor, in Support of First Day Motions (the "Smith Certification"), which is being filed contemporaneously with, and in support of, this Motion. The Smith Certification includes, among other things, and without limitation, descriptions of the Debtor's operations and formation, properties, pre-petition financing and the events precipitating this Chapter 11 filing. The Smith Certification is incorporated herein by reference as if fully set forth herein.

4. The Debtor is a not-for profit Federal Qualified Health Center ("FQHC"), which provides adult medicine, adolescent medicine, pediatrics school based services, internal medicine, obstetrics, gynecology, family planning, pediatrics, dentistry, health education, social work support services and after-hours care. Additional services include HIV/AIDS treatment and therapy, nutritional counseling, and outreach services.

5. The Debtor's corporate headquarters is located at 1700-58 Myrtle Avenue, Plainfield, New Jersey. The Debtor has additional centers located in the City of Plainfield, the City of Elizabeth, Newton, Phillipsburg and neighboring communities. The Debtor leases the locations in the Towns of Newton and Phillipsburg.

6.  The Debtor's primary assets are as follows: (a) Real Property located at 1700-58 Myrtle Avenue, Plainfield New Jersey having a fair market value of approximately $6,118,497 and (b) accounts receivables – approximately $2.5 million.

7.  PNC Bank ("PNC") is a Debtor's secured lender having a first priority mortgage on the Debtor's Real Property. As of January 7, 2015, the Debtor was indebted to PNC in the approximate amount of $480,000.

8.  Neighborhood Health experienced several factors that necessitated the need to file this Chapter 11 bankruptcy petition and restructure its debts through operations. Specifically, New Jersey Primary Care Association ("NJPCA") filed a lawsuit on behalf of NHSC and 19 other FQHCs against the State of New Jersey, Department of Human Services, Department of Medical Assistance and Health Services ("DMAHS") in the action New Jersey Primary Care Association v. State of New Jersey, Department of Human Services, et al., United States District Court, District of New Jersey Civil No. 12-00413 (JAP) for changing without due process the reimbursement payment methodology to the health centers in the State of New Jersey. DMAHS required NHSC to submit six (6) additional fields of data, two of which would be become burdensome to obtain and maintain. In addition, DMAHS caused a critical change it the methodology requiring the Medicaid HMO carriers to pay NHSC before the State would make a supplemental payment to bring the health center to full reimbursement amount. Without both of these conditions being met, DMAHS refused to pay the supplemental payments to NHSC, which lead to significant reimbursement delay in excess of $1 million from July 2011 through August 2012. While NJPCA has won the lawsuit and the State was ordered to provide emergency interim payments. NHSC received its remaining 2011 Third and Fourth Quarter payments on August 24, 2012. DMAHS has continued to delay payments and in most instances has refused to

reimburse NHSC the full amounted owed. Since 2012, NHSC has received on average less than 50% of the amount submitted for reimbursement. To date, DMAHS owes NHSC approximately $1,171,756.

9.      In addition, NHSC has experienced a high turnover in fiscal leadership positions, had to make loan repayments on advances on its HRS 330 grant, update its practice management systems, hire credentialing staff to ensure compliance with Annual Medicare Cost Reports in order to receive Medicare reimbursement for the services, and cover unavoidable and unbudgeted expenses that impacted cash flow.

10.     The Debtor's outstanding priority tax claims are well in excess of $3.5 million. In addition, Local 74 is asserting a claim of approximately $114,639.93 against the Debtor in connection with a judgment obtained. The Debtor's general unsecured non-priority debts are approximately $2.2 million.

## CREDIT CARD ADVANCES

11.     The Debtor's patients utilize credit cards to pay their bills on a daily basis. The frequent use of credit cards and the ease of payment by credit cards make it an essential service for the Debtor's customers.

12.     As part of its operations, the Debtor accepts various credit cards as a form of payment, in addition to cash and checks.

13.     Pursuant to a cursory lien search, upon information and belief, no secured creditor has a lien on cash collateral.

## RELIEF REQUESTED

14.     By this Motion, the Debtor respectfully requests an order authorizing, but not requiring, the Debtor, in its business judgment, to accept credit cards as a method of payment by

customers in the ordinary course of business in the same manner as the Debtor accepted credit card payments prior to the Filing Date, and continue such other similar policies, programs and practices of the Debtor (the "Custom Practices"). Essentially, the Debtor desires to continue during the post-petition period those Custom Practices that it believes were beneficial to its businesses and cost-effective during the pre-petition period, its critical business relationships with its customers and goodwill for the benefit of the estate.

15. The following are general descriptions of the pre-petition customer obligations relating to the Debtor's Custom practices:

## CUSTOM PRACTICES

### Payment by Credit Card

16. Prior to the petition Date, the Debtor accepted various credit cards as a method of payment by its customers in any amount in the ordinary course of its business.

17. The Debtor requests that it be authorized to continue to accept credit card payments after the Filing Date. Moreover, the Debtor requests that any credit card fees payable to such credit card companies, if any, be paid in the ordinary course if such fees were owed pre-petition as a result of a charge but were not actually paid or drawn down until post-petition.

### BASIS FOR RELIEF

18. The success and viability of the Debtor's business, and ultimately the Debtor's ability to successfully reorganize its business, are dependent upon the patronage and loyalty of its customers. In this regard, the Debtor's Custom Practices are critical, and any delay in honoring the Debtor's obligations thereunder will severely and irreparably impair customer relations. Accordingly, the Debtor seeks Court approval for the continuation of its ordinary Custom Practices.

## APPLICABLE AUTHORITY

19.   The Debtor seeks authorization pursuant to §§ 105(a) and 507(a)(7) of the Bankruptcy Code to continue the Custom Practices and to perform certain pre-petition obligations in respect thereof as necessary. Numerous courts have used their § 105(a) equitable powers under the necessity of payment doctrine to authorize payment of a debtor's pre-petition obligations where, as here, such payment is necessary to effectuate the "paramount purpose" of Chapter 11 reorganization, which is to prevent the debtor from going into liquidation and preserve the debtor's potential for rehabilitation. See In re Boston & Main Corp., 634 F.2d 1369, 1382 (1st Cir. 1980), cert. denied sub nom., Meserve v. Chesapeake & O.R. Co., 101 S. Ct. 1518 (1981) (recognizing, in the railroad reorganization context, the existence of judicial authority to authorize trustees in reorganization cases to pay claims where such payment is necessary for the railroad's continued ability to operate and reorganize); In re Lehigh & New England Ry., 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of the corpus"); In re Ionosphere Clubs, Inc., 98 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989) citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984)) (doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor"); see also In re James A. Phillips, Inc., 29 B.R. 391, 394-95 (S.D.N.Y. 1983) (upholding the bankruptcy court's order authorizing the debtor to make post-petition payment of pre-petition claims in the ordinary course without notice and a hearing). Ultimately, the "necessity of payment" doctrine is intended to facilitate the paramount goal of Chapter 11;

namely, "facilitating the continued operation and rehabilitation of the debtor...." Ionosphere Clubs, 98 B.R. at 176.

20.     The loyalty and continued patronage of the Debtor's customers is critical to the Debtor's financial health and reorganization prospects. Numerous courts, including courts in this Circuit and elsewhere, have granted relief similar to that requested herein. See, e.g., In re Pliant Corporation, et al., Case No. 06-10001 (MFW) (Bankr. D. Del. Jan. 4, 2006) (authorizing continuation of numerous consumer programs including customer rebates and customer loyalty programs); In re UAL Corporation, et al., Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 11, 2002) (authorizing continuation of numerous customer programs including frequent flier programs and granting authority to honor ticket holder claims); In re Budget Group, Inc., et al., Case No. 03-12152 (MFW) (Bankr. D. Del. 2002) (authorizing debtors to, among other things, honor customer deposit obligations and pay customer refund, reimbursement and supplemental insurance obligations); In re US Airways Group, Inc., et al., Case No. 02-83984 (SSM) (Bankr. E.D. Va. Aug. 12, 2002) (authorizing continuation of numerous customer programs including frequent flier programs and granting authority to honor ticket holder claims); In re WorldCom, Inc., et al., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. July 23, 2002) (authorizing continuation of numerous customer service programs including promotional services, billing credits, returns and exchanges and allowing debtors to honor customer deposits); ANC Rental Corporation, et al., Case No. 01-11200 (MFW) (Bankr. D. Del. Dec. 17, 2001) (authorizing payment of customer and consumer obligations); In re NationsRent, Inc., Case No. 01-11628 (PJW) Bankr. D. Del. Dec. 18, 2001) (authorizing payment of customer obligations in the ordinary course of business, including rebates, credits, re-rent charges, deposit refunds and special order charges); Trans World Airlines, Inc., et al., Case No. 01-0056 (SLR) (Bankr. D. Del. Jan. 10, 2001) (authorizing

debtors to continue using customer programs and practices in the ordinary course of business); In re Trend Lines, Inc., Case No. 00-15431 (CJK) (Bankr. D. Mass. Aug. 17, 2000) (authorizing debtor to honor gift certificates and store credits); In re United Artists Theatre Company, et al. Case No. 00-3519 (SLR) (Bankr. D. Del. Sept. 5, 2000) (authorizing debtors to continue customer programs and practices); In re Filene's Basement, Inc., Case No. 99-16984 (Bankr. D. Mass. Aug. 24, 1999) (authorizing continuation and payment of certain pre-petition consumer practices).

21. The success, viability and revitalization of the Debtor's business are dependent upon the development and maintenance of customer loyalty. To preserve the value of its business, the Debtor must be permitted, in its sole discretion, to continue honoring and continuing all Custom Practices, without interruption or modification.

22. Accordingly, authorizing the Debtor to continue its Customer Practices is in the best interests of the Debtor, its estate and creditors.

23. No previous request for the relief sought herein has been made to this Court or any other court.

### WAIVER OF NOTICE

24. No trustee, examiner, or official committee has been appointed in this Chapter 11 cases. Notice of this Motion has been provided to the (i) Office of the United States Trustee; (ii) the Debtor's pre-petition secured lender; and (iii) the creditors identified as the Debtor's twenty (20) largest unsecured creditors. In light of the exigent circumstances and emergency nature of the relief requested in this Motion and the immediate and irreparable harm to the Debtor's estate that will certainly follow if the relief requested herein is not granted, the Debtor respectfully submits that any further notice is not feasible under the circumstances.

**WHEREFORE**, the Debtor respectfully requests that the Court (i) enter an order, substantially in the form submitted herewith, authorizing the continuation of certain Custom Practices and (ii) grant such other and further relief as the Court deems just and proper.

>Respectfully submitted,
>
>**GIORDANO HALLERAN & CIESLA, P.C.**
>Proposed Counsel to Neighborhood Health Services
> Corporation, Chapter 11 Debtor in Possession
>
>By: */s/ Donald F. Campbell, Jr.*
>DONALD F. CAMPBELL, JR.

Dated: January 9, 2015

Docs #1781468-v1