Donald F. Campbell, Jr., Esq. (DC8924)
**GIORDANO, HALLERAN & CIESLA, P.C.**
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701
(732) 741-3900

Proposed Attorneys for Debtor, Neighborhood
Health Services Corp.

---

| | |
|---|---|
| In re<br><br>NEIGHBORHOOD HEALTH SERVICES CORPORATION,<br><br>                  Debtor. | **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY, NEWARK VICINAGE**<br><br>Chapter 11<br><br>Case No. 15-10277 (VFP)<br><br>Judge: Hon. Vincent F. Papalia, U.S.B.J. |

**APPLICATION IN SUPPORT OF DEBTOR'S MOTION FOR AUTHORITY TO CONTINUE TO USE EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, BUSINESS FORMS, AND POSTAGE DEPOSIT ACCOUNT PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(c).**

**TO:  HONORABLE VINCENT F. PAPALIA
UNITED STATES BANKRUPTCY JUDGE**

The Chapter 11 debtor and debtor-in possession herein, Neighborhood Health Services Corporation ("NHSC" or "Debtor"), by and through proposed counsel, Giordano, Halleran & Ciesla, P.C., respectfully moves before this Court for Authority to continue to use its existing cash management system, bank accounts, business forms, and postage depots accounts pursuant to title 11 of the United States Code (the "Bankruptcy Code") sections 105(a) and 363(c) (the Motion"), and in support thereof respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a "core proceeding" pursuant to 38 U.S.C. § 157(b)(2)(A), (N), and (O).

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4. A thorough description of the Debtor's operations is set forth in the Certification of Rudine Smith, President and Chief Executive Officer of Neighborhood Health Services Corporation, Debtor, in Support of First Day Motions (the "Smith Certification"), which is being filed contemporaneously with, and in support of, this Motion. The Smith Certification includes, among other things, and without limitation, descriptions of the Debtor's operations and formation, properties, pre-petition financing and the events precipitating this Chapter 11 filing. The Smith Certification is incorporated herein by reference as if fully set forth herein.

5. The Debtor is a not-for profit Federal Qualified Health Center ("FQHC"), which provides adult medicine, adolescent medicine, pediatrics school based services, internal medicine, obstetrics, gynecology, family planning, pediatrics, dentistry, health education, social work support services and after-hours care. Additional services include HIV/AIDS treatment and therapy, nutritional counseling, and outreach services.

6. The Debtor's corporate headquarters is located at 1700-58 Myrtle Avenue, Plainfield, New Jersey. The Debtor has additional centers located in the City of Plainfield, the City of Elizabeth, Newton, Phillipsburg and neighboring communities. The Debtor leases the locations in the Towns of Newton and Phillipsburg.

7. The Debtor's primary assets are as follows: (a) Real Property located at 1700-58 Myrtle Avenue, Plainfield New Jersey having a fair market value of approximately $6,118,497 and (b) accounts receivables – approximately $2.5 million.

8. PNC Bank ("PNC") is a Debtor's secured lender having a first priority mortgage on the Debtor's Real Property. As of January 7, 2015, the Debtor was indebted to PNC in the approximate amount of $480,000.

9. Neighborhood Health experienced several factors that necessitated the need to file this Chapter 11 bankruptcy petition and restructure its debts through operations. Specifically, New Jersey Primary Care Association ("NJPCA") filed a lawsuit on behalf of NHSC and 19 other FQHCs against the State of New Jersey, Department of Human Services, Department of Medical Assistance and Health Services ("DMAHS") in the action New Jersey Primary Care Association v. State of New Jersey, Department of Human Services, et al., United States District Court, District of New Jersey Civil No. 12-00413 (JAP) for changing without due process the reimbursement payment methodology to the health centers in the State of New Jersey. DMAHS required NHSC to submit six (6) additional fields of data, two of which would be become burdensome to obtain and maintain. In addition, DMAHS caused a critical change it the methodology requiring the Medicaid HMO carriers to pay NHSC before the State would make a supplemental payment to bring the health center to full reimbursement amount. Without both of these conditions being met, DMAHS refused to pay the supplemental payments to NHSC, which lead to significant reimbursement delay in excess of $1 million from July 2011 through August 2012. While NJPCA has won the lawsuit and the State was ordered to provide emergency interim payments. NHSC received its remaining 2011 Third and Fourth Quarter payments on August 24, 2012. DMAHS has continued to delay payments and in most instances has refused to

reimburse NHSC the full amounted owed. Since 2012, NHSC has received on average less than 50% of the amount submitted for reimbursement. To date, DMAHS owes NHSC approximately $1,171,756.

10. In addition, NHSC has experienced a high turnover in fiscal leadership positions, had to make loan repayments on advances on its HRS 330 grant, update its practice management systems, hire credentialing staff to ensure compliance with Annual Medicare Cost Reports in order to receive Medicare reimbursement for the services, and cover unavoidable and unbudgeted expenses that impacted cash flow.

11. The Debtor's outstanding priority tax claims are well in excess of $3.5 million. In addition, Local 74 is asserting a claim of approximately $114,639.93 against the Debtor in connection with a judgment obtained. The Debtor's general unsecured non-priority debts are approximately $2.2 million.

## RELIEF REQUESTED AND BASIS THEREFOR

12. To supervise the administration of Chapter 11 cases, the Office of the United States Trustee (the "United States Trustee") has established certain operating guidelines for debtors-in-possession. Those guidelines require Chapter 11 debtors, *inter alia*, to (i) close all existing bank accounts and open new debtor-in-possession bank accounts; (ii) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (iii) maintain a separate debtor-in-possession account for cash collateral; and (iv) for all debtor-in-possession checking accounts, obtain checks bearing the designation "debtor-in-possession," the bankruptcy case number, and the type of account. Those requirements are designated to provide a clearly defined boundary between a debtor's pre-petition and postpetition transaction and operations and prevent the inadvertent postpetition payment of pre-petition claims.

A. **Request to maintain Bank Account and Cash Management System**

13. In order to lessen the disruption caused by the bankruptcy filing and maximize the value of its estate in this Chapter 11 case, it is vital to the Debtor that it maintains its existing Bank Accounts and Cash Management system (as hereinafter defined). By allowing the continued use of its existing Bank Accounts and Cash Management System, the Debtor will have a reliable mechanism in place to manage the cash-flow of its operations.

14. The Debtor should also be granted authority to maintain its existing Bank Accounts, and the Debtor seeks a waiver of the United States Trustees guideline that requires that bank accounts be closed and that new postpetition bank accounts be opened. Subject to a prohibition against honoring prepetition checks without specific authorization from this Court, the Debtor request that the Bank Accounts be deemed to be debtor-in-possession accounts, and that their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms as those employed during the pre-petition period, be authorized. The Debtor represents that if the relief requested in this Motion is granted, it will not pay, and the Banks will be directed not to pay, any debts incurred before the Petition Date, other than as authorize by this Court.

15. The Debtor will work closely with the Banks to ensure that appropriate procedures are in place so that checks issued prior to the Petition Date, but presented after the Petition Date, will not be honored absent approval from the Court. No prepetition checks, drafts, wire transfers, or other forms of tender that have not yet cleared the relevant drawee bank as of the Petition Date will be honored unless authorized by separate Order of this Court.[1] The Debtor also requests authority to preserve various reporting requirements and accounting mechanisms,

---

[1] In accordance with existing practices, the Debtor will maintain strict records of all receipts and disbursements from the Bank Accounts during the pendency of this case and will ensure that its records properly distinguish between prepetition and postpetition transaction.

5

such as signatory authorizations and accounting systems central to the maintenance of the Bank Accounts. The interruption or termination of such reporting and accounting mechanisms would undermine the utility of the Bank Accounts.

16. With regard to the Debtor's management of cash-flow, in the ordinary course of its operations, the Debtor maintains a cash management system (the "Cash Management System") to receive and disburse funds. The Cash Management System includes the necessary accounting controls to enable the Debtor, as well as its creditors and the Court, to trace funds through the system and ensure that all transactions are adequately documented and readily ascertainable. The Debtor maintains and will continue to maintain detailed and accurate accounting records reflecting all transfers of funds and on whose behalf such funds are transferred. The Debtor's cash management procedures are ordinary, usual, and essential business practices. They are similar to those used by other corporate enterprises and provide significant benefits to the Debtor, including the ability to (a) accurately and immediately report receipts and expenditures; (b) control corporate funds centrally; (c) ensure the availability of funds when necessary; and (d) reduce administrative expenses by centralizing the movement of funds.

17. The Debtor's continued ordinary-course use of its Cash Management System is consistent with Bankruptcy Code section 363(c)(1), which allows a debtor-in-possession to "use property of the estate in the ordinary course of business." In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985). The Debtor will maintain records of all transfers within the Cash Management System, so that all transfers and transactions will be documented in its books and records to the same extent such information was maintained by the Debtor prior to the Petition date.

18.     Accordingly, the Debtor respectfully requests authorization to maintain its Bank Accounts and Cash Management System in the ordinary courts of its business.

**B.    Request for Authorization to Maintain Existing Business Forms**

19.     By way of this Motion, the Debtor also seeks authority to continue to use its prepetition business forms including, but not limited to, letterhead, invoices, checks, *et cetera* (collectively, the "Business Forms"), without reference to its status as a debtor-in-possession. Requiring the Debtor to immediately print new Business Forms would be burdensome, expensive, and disruptive. The Debtor will, however, either print or stamp "Debtor-in-Possession" on its checks, and when it replaces its stock, it will obtain checks marked "Debtor-in-Possession."

20.     The Debtor submits that the authorization to use the Business Forms will facilitate smooth and orderly Chapter 11 cases and minimize the disruption to the Debtor's operations without violating the policies underlying the Bankruptcy Code.

21.     Accordingly, the Debtor requests that it be authorized to use its existing Business Forms without being required to label each with the "Debtor-in-Possession" identifier. If, however, the Debtor exhausts its supply of Business Forms, it will replace such forms and print "Debtor-in-Possession" on such forms.

**C.    Request for authorization to Continue Using Existing Postage Deposit Accounts**

22.     In the ordinary course of its operations, NHSC maintains advance deposit accounts with the United States Postal Service through Pitney Bowes Global (the "Postage Deposit Accounts"). These Postage Deposit Accounts allow the company to maintain postage account deposit funds for all of its customers. With respect to the advance deposit account maintained with the Pitney Bowes Global, the funds are forwarded by the company to the United

States Postal Service, which are prepaid by check through the Debtor's PNC checking account. The system is an electronic postage payment system that provides business mailers with a centralized way to fund mass business mailings. Failure to fund the account at the United States Postal Service would cause immediate and irreparable harm to the Debtor's business, as the company would be unable to mail its customers' print statements and various other communications.

**D.    11 U.S.C. § 105(a)**

23.    Finally, the Debtor submits that the relief requested by way of this Motion is warranted under Bankruptcy Code section 105(a), which provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The third Circuit has stated that "[i]t is well settled that the court's power under [section] 105(a) is broad." In re Nixon, 404 Fed.Appx. 575, 578 (3d Cir. (Pa.) 2010) (citing In re Combustion Eng'g. Inc., 381 F.3d 190, 236 (3d Cir. 2004)). Under the Third Circuit's view, section 105(a) "is a powerful, versatile tool that empowers bankruptcy courts and district courts sitting in bankruptcy to fashion orders in further of Bankruptcy Code Provisions." Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert), 411 F.3d 452, 455 (3d Cir. (Pa.) 2005), see also In re Kaiser Aluminum Corp., 456 F.3d 328 (3d Cir. (Del.) 2006) (collecting cases). Other Circuits concur with this view. See Davis v. Davis (In re Davis), 170 F.3d 475, 492 (5th Cir. 1999) ("[section] 105 [is] an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purposed of [section] 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of its jurisdiction . . . .") (internal citations and quotations omitted).

24. Permitting the Debtor to use its existing Bank Accounts, Cash Management system, Business forms, and Postage Deposit Account is in the best interests of the Debtor's estate, creditors, and other interested parties.

## NOTICE

25. The Debtor proposes to give notice of this Motion to the Office of the United States Trustee, its secured lenders, counsel to the Unsecured Creditors' Committee, and any party who has requested notice. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## NO PRIOR REQUEST

26. No prior application for the same or similar relief has been made to this or any other court.

## REQUEST FOR WAIVER OF BRIEF

27. As no novel issue of law is raised and the relevant authorities relied upon by the Debtor are set forth herein, the Debtor respectfully requests that the requirement of District of New Jersey Local Bankruptcy Rule 9013-2 concerning the filing of a brief be waived.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order, substantially in the form submitted herewith, granting the relief requested herein and such other and further relief as this Court deems just and proper.

Respectfully submitted,

**GIORDANO HALLERAN & CIESLA, P.C.**
Proposed Counsel to Neighborhood Health Services
  Corporation, Chapter 11 Debtor in Possession


By: */s/ Donald F. Campbell, Jr.*
DONALD F. CAMPBELL, JR.

Dated: January 9, 2015
Docs #1782002-v1